UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X     Case No.: 1:22-cv-5602
RONALD SHUMAN,

                Plaintiff,

                                                           **COMPLAINT**

    -against-

THE CAPITAL MARKETS COMPANY, LLC, individually     Plaintiff Demands
and d/b/a "CAPCO,"                                                             A Trial by Jury

                Defendant.
------------------------------------------------------------------X

Plaintiff, Ronald Shuman, by and through his attorneys, Phillips & Associates, PLLC, upon information and belief, complains of Defendant THE CAPITAL MARKETS COMPANY, LLC, individually and d/b/a "CAPCO," as follows:

## INTRODUCTION

1. This is a case about an international consulting firm which, despite its purported commitment to "diversity, inclusion, respect, and integrity," abruptly terminated a gay employee after he disclosed his status as a human immunodeficiency virus ("HIV") carrier.

2. Plaintiff complains pursuant to the New York State Executive Law and the Administrative Code of the City of New York, seeking damages to redress the injuries he has suffered as a result of being discriminated against on the basis of his sexual orientation and actual and/or perceived disability, together with unlawful termination.

## JURISDICTION AND VENUE

3. The Court has jurisdiction pursuant to §1332 in that there is complete diversity of citizenship and the matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.

4. Venue is proper in this district based upon the fact that a substantial part of the events and omissions giving rise to the claim occurred within the Southern District of New York. 28 U.S.C. §1391(b).

5. Defendant's conduct is also in violation of Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §2000e *et seq.* ("Title VII"), and theAmericans with Disabilities Act, as amended, 42 U.S.C. §12101 *et seq.* ("ADA"). For these violations, Plaintiff will be filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and will file an Amended Complaint following his receipt of a Notice of Right to Sue.

## PARTIES

6. Plaintiff is a disabled, homosexual male resident of the State of New York, County of Kings.

7. At all times material, Defendant THE CAPITAL MARKETS COMPANY, LLC, individually and d/b/a "CAPCO" (hereinafter "CAPCO") was and is a foreign limited liability company duly existing under the laws of the State of Delaware.

8. At all times material, Defendant CAPCO was and is a foreign limited liability company authorized to conduct business, and which does conduct business, under the laws of the State of New York.

9. At all times material, Defendant CAPCO was and is an international technology and management consulting firm, which operates an office located at 77 Water Street, 10th Floor, New York, NY 10005.

10. At all times material, Plaintiff was an employee of Defendant CAPCO.

## MATERIAL FACTS

11. In or around 1996, Plaintiff was diagnosed with HIV.

12. In or around May 2021, Plaintiff's former coworker, and "U.S. Lead of Talent and Culture Transformation" for Defendant CAPCO, Casey Schaffer, contacted Plaintiff and encouraged him to apply for an open position as a "Managing Principal" at Defendant CAPCO.

13. Plaintiff submitted an online application and was invited to interview for the position.

14. Thus, in or around the end of May 2021, Plaintiff interviewed for the Managing Principal position with Head of U.S. Strategy, Isaac Halpern, Senior Partner, Nick Johnson, and Partner, Owen Priestley.

15. During the interview, Plaintiff elaborated on his qualifications, and more than fifteen years of experience, working in the human resources and business consulting industries with companies such as Tesla Motors, Northwestern Mutual, and Komodo Health.

16. After the interview, Defendant CAPCO offered Plaintiff the Managing Principal position, with an annual salary of $205,000, plus bonuses. Plaintiff accepted the offer of employment.

17. Accordingly, in or around June 2021, Plaintiff began working for Defendant CAPCO as a Managing Principal within the company's "Digital Practice."

18. In that capacity, Plaintiff was responsible for developing change management and future of work solutions for Defendant CAPCO's clients. The position was fully remote.

19. During his first two months of employment, while he never formally disclosed his sexual orientation to anyone, Plaintiff spoke openly about his husband at work.

20. Thus, it was common knowledge amongst Plaintiff's colleagues that he was gay.

21. However, Plaintiff did not immediately disclose his HIV-status to coworkers because it did not affect his ability to work, and because of the negative stigma associated with the disease.

22. Nevertheless, in or around July 2021, Defendant CAPCO assigned Plaintiff his first client, the "Knights of Columbus" ("KOC"), a non-profit Catholic fraternal organization that offers life

insurance to its members. Notably, membership in the Knights of Columbus is exclusively limited to devout, male Catholics. As the Managing Principal for KOC, Plaintiff was tasked with implementing a digital transformation plan for the organization.

23. Later that month, Plaintiff conducted a virtual Zoom presentation with KOC's employees.

24. During the presentation, KOC's Director of Enterprise Business Improvement Services, Ryan Knopp, noticed a framed picture in the background of Plaintiff and another man and asked, "So who's that in the picture with you?"

25. When Plaintiff told Mr. Knopp that the picture was of him and his husband, Mr. Knopp became visibly uncomfortable and did not respond. Nevertheless, Plaintiff carried on with the presentation.

26. Based on Mr. Knopp's reaction, as well as the religious tenets of the KOC, Plaintiff reasonably believed that the organization did not approve of his sexual orientation and same-sex marriage.

27. Thus, unsurprisingly, two weeks later, another Managing Partner, Sabrina Amjad, notified Plaintiff that he would no longer be working with the KOC.

28. Though Defendant CAPCO quickly acquiesced to KOC's homophobic, discriminatory demand to cease working with Plaintiff, Plaintiff did not complain because he was a new hire and feared that doing so would negatively impact his employment.

29. Nevertheless, in or around the beginning in or around August 2021, Defendant CAPCO reassigned Plaintiff to work with another insurance company, Sun Life Financial.

30. In his new role, Plaintiff was tasked with change management and creating an informative video series to help Sun Life Financial identify its technological capabilities and shortcomings.

31. Then, in or around November 2021, Plaintiff joined one of Defendant CAPCO's employee affinity/resource groups, the "LGBTQ-Employee Resource Group."

32. Later that month, Plaintiff attended a virtual meeting with other members of the LGBTQ-Employee Resource Group in order to prepare for an upcoming AIDS awareness event.

33. During the meeting, a gay male coworker (first and last name currently unknown) advised Plaintiff against discussing his sexual orientation at work.

34. When Plaintiff asked why, the coworker emphasized the fact that there were no LGBTQ-employees in Defendant CAPCO's "senior leadership."

35. The coworker further opined that LGBTQ-employees at Defendant CAPCO were not afforded the same promotion or advancement opportunities as their heterosexual counterparts.

36. Based on these statements, Plaintiff became even more apprehensive about the working environment at Defendant CAPCO.

37. Nevertheless, on or about December 1, 2021, Plaintiff and the LGBTQ-Employee Resource Group held their virtual AIDS awareness event, which was attended by approximately thirty employees, including Mr. Johnson and other members of Defendant CAPCO's senior leadership.

38. During the event, Plaintiff disclosed his HIV-status and spoke on his experience living with the disease. Given that Defendant CAPCO had apparently sanctioned/sponsored the event, Plaintiff hoped that the company would be receptive and supportive of his disability.

39. However, Plaintiff would soon learn that the above-mentioned coworker's belief that Defendant CAPCO's senior leadership did not truly support the LGBTQ community was true.

40. Specifically, on or about December 13, 2021, **less than two weeks after disclosing his HIV-status**, Mr. Priestley suddenly placed Plaintiff on a Performance Improvement Plan ("PIP").

41. The PIP set forth a three-step "Action Plan," which required Plaintiff to: 1) remove [himself] from all activities not related to sales support, client project delivery, and people development;

|   |   |
|---|---|
| | 2) develop a six-month sales and delivery plan; and 3) improve his "client facing communications" and "stakeholder management." |
| 42. | Crucially, Defendant CAPCO's requirement that Plaintiff "remove himself" from all non-business-related activities referred to his participation in the LGBTQ-Employee Resource Group, which the company clearly did not approve of or condone. |
| 43. | Additionally, as part of the PIP, Plaintiff was to meet with Mr. Priestly on a weekly basis to evaluate his progress towards the goals laid out in the Action Plan.  Mr. Priestley also informed Plaintiff that the PIP was to commence on January 1, 2022, and end on January 31, 2022. |
| 44. | Finally, Mr. Priestley claimed that the PIP was issued because of feedback he had received from another Defendant CAPCO Partner, Ian Lee, regarding a presentation Plaintiff gave to Sun Life Financial in November 2021. |
| 45. | However, this was pretext, because the only feedback had Plaintiff received from Mr. Lee regarding this presentation concerned his "clarity" and "crispness," which Plaintiff improved immediately thereafter. |
| 46. | In fact, after receiving this counseling from Mr. Lee, Plaintiff gave Sun Life Financial three more presentations for which he did not receive any negative feedback or criticism. |
| 47. | In reality, Defendant CAPCO placed Plaintiff on a PIP because of its discriminatory animus towards Plaintiff for being gay and for being HIV positive, and in order to create a pretextual paper trail to justify his termination. |
| 48. | Meanwhile, in or around the end of December 2021, Plaintiff received positive feedback from multiple colleagues in his 2021 Annual Performance Review, despite being placed on a PIP just days earlier.  Plaintiff also received a 5 out of 5 rating from an "anonymous" colleague. |

49. Regardless of Defendant CAPCO's discriminatory conduct, and the peculiarity of being placed on a PIP and receiving a positive performance review almost contemporaneously, Plaintiff was determined to exceed expectations and successfully complete the goals of his PIP.

50. Immediately following the commencement of Plaintiff's PIP, things began to trend in the right direction.

51. For example, in or around January 2022, during one of their weekly check-in meetings, Mr. Priestly commended Plaintiff for his demonstrated "improvement" with respect to taking direction and pivoting to the goals of the PIP.

52. Moreover, pursuant to the Action Plan, Plaintiff developed a six-month sales and delivery plan that was approved by another Defendant CAPCO Partner, Phil Kerkel.

53. Plaintiff also stopped participating in meetings with the LGBTQ-Employee Resource Group, despite the fact that "community engagement" was one of the areas in which employees were evaluated in their Annual Performance Review.

54. However, despite these positive developments, Plaintiff fell short of meeting Defendant CAPCO's seemingly moving performance targets.

55. As such, on or about February 7, 2021, during a meeting with Mr. Priestly and Human Resource Business Partner, Stephen Baker, Defendant CAPCO terminated Plaintiff's employment.

56. Mr. Priestly's stated reason for Plaintiff's termination was "performance issues."

57. However, this was pretext, because during the same meeting, **Mr. Priestly admitted that Plaintiff had successfully completed the goals of his PIP**.

58. In reality, Plaintiff's PIP was never designed to improve his purported performance issues with the goal of retaining him. Rather, it was a discriminatory means for Defendant CAPCO to "check a box" before firing Plaintiff.

59. Defendant CAPCO terminated Plaintiff because of his sexual orientation and HIV-status.

60. Defendant CAPCO would not have discriminated against Plaintiff but for his sexual orientation and actual and/or perceived disability.

61. As a result of Defendant CAPCO's actions, Plaintiff felt, and continues to feel, extremely humiliated, degraded, violated, embarrassed, and emotionally distressed.

62. As a result of Defendant CAPCO's discriminatory and intolerable treatment of Plaintiff, he suffered, and continues to suffer, severe emotional distress and physical ailments.

63. As a result of the acts and conduct complained of herein, Plaintiff has suffered, and will continue to suffer, the loss of income, the loss of a salary, bonuses, benefits, and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses and emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

64. As Defendant CAPCO's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages against Defendant CAPCO.

**AS A FIRST CAUSE OF ACTION**
**UNDER STATE LAW**
**<u>DISCRIMINATION</u>**

65. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

66. Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of an individual's … sexual orientation … [or]

disability … to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

67. Defendant CAPCO engaged in an unlawful discriminatory practice by discriminating against the Plaintiff on the basis of his sexual orientation and actual and/or perceived disability, together with unlawful termination.

68. Plaintiff hereby makes a claim against Defendant CAPCO under all of the applicable paragraphs of Executive Law §296.

## AS A SECOND CAUSE OF ACTION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## DISCRIMINATION

69. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

70. The Administrative Code of City of New York, Title 8, §8-107 [1] provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee of agent thereof, because of the actual or perceived … disability … [or] sexual orientation … of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

71. Defendant CAPCO engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff on the basis of his sexual orientation and actual and/or perceived disability, together with unlawful termination.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendant CAPCO:

A. Declaring that Defendant CAPCO engaged in an unlawful discriminatory practice prohibited by the New York State Executive Law and the New York City Administrative Code, and that Defendant CAPCO discriminated against Plaintiff on the basis of his sexual orientation and actual and/or perceived disability, together with unlawful termination;

B. Awarding damages to the Plaintiff for any lost wages and benefits, past and future, back pay and front pay, resulting from Defendant CAPCO's unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to reputation in an amount in excess of the jurisdiction of all lower courts;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorney's fees, costs, and expenses incurred in the prosecution of the action;

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant CAPCO's unlawful employment practices.

**JURY DEMAND**

Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE,** Plaintiff demands judgment against Defendant CAPCO in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: June 30, 2022
       New York, NY

By:   */s/ Max C. Bracero, Esq.*
      **PHILLIPS & ASSOCIATES, PLLC**
      *Attorneys for Plaintiff*
      Max C. Bracero, Esq.
      45 Broadway, Suite 430
      New York, New York 10006
      mbracero@tpglaws.com
      (212)-248-7431